G. D. SEARLE & CO., Plaintiff-Appellant,

v.

CHAS. PFIZER & CO., Inc., Defendant-Appellee.

No. 12321.

United States Court of Appeals Seventh Circuit.

March 26, 1959.

Rehearing Denied April 28, 1959.

Stuart S. Ball, William T. Woodson, Chicago, Ill., Richard J. Flynn, Chicago, Ill., Lewis S. Garner, Walter Ramm, Sidley, Austin, Burgess & Smith, Woodson, Pattishall & Garner, Chicago, Ill., of counsel, for appellant.

Arthur G. Connolly, Wilmington, Del., W. J. Marshall, Jr., Chicago, Ill., Werner H. Hutz, Wilmington, Del., Thomas J. Connors, Brooklyn, N. Y., of counsel, for appellee.

Before DUFFY, Chief Judge, and HASTINGS and PARKINSON, Circuit Judges.

DUFFY, Chief Judge.

This is an appeal from a judgment of the District Court dismissing plaintiff's action for infringement of a registered trademark and for unfair competition. The trademarks in this controversy are "Dramamine" used by plaintiff and "Bonamine" used by defendant. The trademarks are used for motion sickness remedies or preventives. These products are now sold to the general public without a physician's prescription.

In 1947 plaintiff developed a pharmaceutical product for use in the prevention and treatment of motion sickness. It adopted the coined and fanciful trademark "Dramamine." Tests were conducted in cooperation with the Surgeon General of the Army and doctors at Johns Hopkins Hospital which established the product's effectiveness both in the prevention and treatment of motion sickness. On February 14, 1949, the Surgeon General released a report of the results of these tests which received wide and favorable publicity. On March 3, 1949, Dramamine was released for sale by prescription. Prior to December 1, 1953, plaintiff's sales of Dramamine exceeded $12,000,000.00. About November 10, 1954, plaintiff was authorized to sell Dramamine over the counter without a prescription.

Plaintiff has sold its motion sickness remedy under the trademark "Dramamine" ever since it was placed on the market. It registered "Dramamine" as the trademark in the United States Patent Office on July 18, 1950, and the mark was given Registration No. 527862. The registration has become incontestable. 15 U.S.C.A. § 1065.

About July 1, 1953, defendant purchased the United States rights to a product known as U.C.B. 5062 which had been developed by a Belgian manufacturer and sold in Europe as a motion sickness remedy under the trademark "Postafene." Defendant requested certain of its employees to suggest a trade mark for U.C.B. 5062, informing them the product was "to be indicated for use in motion-sickness and is competitive with Dramamine." One hundred fifty-eight names were suggested. From this long list defendant selected the name "Bonamine." Dr. Moore, a phonetics expert testified that Bonamine was more like Dramamine than any other word on the list.

A somewhat similar situation existed in Q-Tips, Inc. v. Johnson & Johnson, 3 Cir., 206 F.2d 144, where the defendant was confronted with the trademark "Q-Tips." The court said, page 147: "The evidence shows a list of dozens of names suggested by various employees, many of which are arbitrary, fanciful and completely unlike anything suggested by the plaintiff's product. But in the end defendant's top management came up with the name under discussion, 'Cotton Tips.' It is quite clear why, with all the possibilities open to it, defendant made this choice. * * *"

Defendant, a late-comer in the field, knew of plaintiff's use of the trademark Dramamine, and of the predominant position of Dramamine in the market at the time it chose to compete with its product which it designated as Bonamine. Defendant recognized this predominant position the following year when it issued instructions to salesmen stating "Dram-

amine has been on the market for a number of years and has been intensely promoted; consequently its biggest advantage now is that physicians have the Dramamine habit."

■ The statement which we made a number of years ago in Northam Warren Corp. v. Universal Cosmetic Co., 7 Cir., 1927, 18 F.2d 774, 775, is a good and safe rule to follow: "One entering a field of endeavor already occupied by another should, in the selection of a trade-name or trade-mark, keep far enough away to avoid all possible confusion. * * *"

Many products competitive to Dramamine came upon the market. On July 25, 1955, a district representative of Pfizer sent out a sales letter which contained the following: "The motion sickness market is a tremendous market running into millions and millions of dollars. At the present time, the bulk of this market is enjoyed by one of our competitors * * * your competition is Dramamine. * * *"

The trademark Dramamine is non-descriptive. In G. D. Searle & Co. v. Institutional Drug Distributors, Inc., D.C., 141 F.Supp. 838, 839, Chief Judge Yankwich referred to Dramamine as " * * * a strong, non-descriptive and valid mark, used to designate tablets of Dimenhydrinate * * *." The same judge in G. D. Searle & Co. v. Institutional Drug Distributors, Inc., D.C., 151 F.Supp. 715, 717, again referring to Dramamine said: "The mark is not descriptive. By all standards it is a strong mark. * * * Marks of this character, especially when exploited on a national basis, have been given the highest protection by the courts both before and since the enactment of the Lanham Act. 15 U.S.C.A. §§ 1051, 1127. * * *" We agree with Judge Yankwich's statements.

■ Finding of Fact 10 states, "The words Bonamine and Dramamine are unlike. As plaintiff argued that the two words represented sounds which were acoustically similar and often confused, the Court devoted close attention to the two words as variously pronounced by counsel and witnesses throughout the proceedings. It is the finding of the Court that plaintiff's view is not supported by the evidence." There was no other finding as to likelihood of confusion.

■ That part of the finding which states Dramamine and Bonamine are unlike is clearly erroneous. Dramamine and Bonamine contain the same number of syllables; they have the same stress pattern, with primary accent on the first syllable and secondary accent on the third; the last two syllables of Dramamine and Bonamine are identical. The initial sounds of Dramamine and Bonamine ("d" and "b") are both what are known as "voiced plosives" and are acoustically similar; the consonants "m" and "n" are nasal sounds and are acoustically similar. The only dissimilar sound in the two trademarks is the "r" in Dramamine. Slight differences in the sound of similar trademarks will not protect the infringer. Lambert Pharmacal Co. v. Bolton Chemical Corp., 2 Cir., 219 F. 325, 326.

■ Finding 10 seems to indicate that the trial court was of the view it was plaintiff's burden to prove that the words "Dramamine" and "Bonamine" were often confused. Such is not the correct test in determining whether a trademark has been infringed. When this case was here before, we said, 7 Cir., 231 F.2d 316, 317: " * * * it is not necessary to show actual cases of confusion since the test under the statute, 15 U.S.C.A. § 1114 (1), is likelihood of confusion." We cited Independent Nail & Packing Company, Inc. v. Stronghold Screw Products, Inc., 7 Cir., 205 F.2d 921, 925, and Keller Products, Inc. v. Rubber Linings Corp., 7 Cir., 213 F.2d 382, 386, 47 A.L.R.2d 1108.

Section 32 of the Trade-Mark Act of 1946, 15 U.S.C.A. § 1114(1), gives the holder of a trademark, such as plaintiff, a right of action against "Any person who shall, in commerce, (a) use, without the consent of the registrant, any * * * colorable imitation of any registered mark in connection with the sale, offering for sale, or advertising of any

goods * * * on or in connection with which such use is likely to cause confusion or mistake or to deceive purchasers as to the source of origin of such goods * * *."

Section 45 of that Act (15 U.S.C.A. § 1127) defines "colorable imitation" to include "any mark which so resembles a registered mark as to be likely to cause confusion or mistake or to deceive purchasers." Thus, it is clear that the test is likelihood of confusion and not the quantity of actual confusion.

Although plaintiff proved several instances of actual confusion, such proof is not required. Defendant's reliance on Rytex Co. v. Ryan, 7 Cir., 126 F.2d 952 is misplaced. That case does not express the rule in this circuit. In Barbasol v. Jacobs, 7 Cir., 160 F.2d 336, 340, we said "* * * we are convinced that our holding in the Rytex case pertinent to the instant question was an erroneous statement of law."

That part of Finding 10 which states the court devoted close attention to the pronunciation of the two names by counsel and witnesses was, in effect, a side by side comparison. This is likewise not a correct test. This Court has discussed the frailty of such tests in Colburn v. Puritan Mills Inc., 7 Cir., 108 F.2d 377, 378, and Albert Dickinson Co. v. Mellos Peanut Co. of Illinois, 7 Cir., 179 F.2d 265, 269. In these two cases we stated the rule recognized in this circuit, viz., we must determine the purchasing public's state of mind when confronted by somewhat similar trade names singly presented.

Since it is the effect upon prospective purchasers that is important, the conditions under which they act must be considered. Albert Dickinson Co. v. Mellos Peanut Co. of Illinois, 7 Cir., 179 F.2d 265, 270.

The trademarks "Dramamine" and "Bonamine" designate products which have identical uses; are sold to the public through the same channels of trade; are widely promoted by word-of-mouth advertising and often are purchased through oral or telephone requests. The two products are sold to the same class of customers. All sales are made without direct advertising to the ultimate consumer. On a dosage basis, the two products are priced competitively. Each product is produced by a well-known pharmaceutical manufacturer.

Defendant argues Bonamine is a white tablet while Dramamine is yellow and that the shape and size of the bottle containers are different. Such differences would not be helpful in distinguishing between the products, as they are usually sold. In any event, such differences would not be controlling, for it is the similarity of the sound of Dramamine and Bonamine, and the methods used for promotion and marketing, that make for confusion.

Defendant cites a number of cases where the trademarks involved had similar suffixes but dissimilar prefixes and where the marks were held to be not confusingly similar. Some of the cases cited are: Pennzoil Co. v. Crown Central Petroleum Corp., 4 Cir., 140 F.2d 387, involving the marks "Pennzoil" and "Greenzoil" for motor oil; Syncromatic Corp. v. Eureka Williams Corp., 7 Cir., 174 F.2d 649, involving the marks "Syncromatic" and "Oil-O-Matic" for oil burning heaters; Kensington Steel Co. v. Nichols Engineering and Research Corp., 188 F.2d 397, 38 C.C.Pa. 979, involving the marks "Nercalloy" and "Oroloy" for metal castings; and Upjohn Co. v. Schwartz, 2 Cir., 246 F.2d 254, involving the marks "Syrocol" and "Cheracol."

A long list of cases could be cited where trademarks with dissimilar prefixes but with similar suffixes had been held to be confusingly similar. Typical are: "Q-Tips" and "Cotton Tips", Q-Tips Inc. v. Johnson & Johnson, 3 Cir., 206 F.2d 144; "LaTouraine" and "Lorraine", LaTouraine Coffee Co. Inc. v. Lorraine Coffee Co. Inc., 2 Cir., 157 F.2d 115; "Peroxogen" and "Dioxogen", Bookman v. Oakland Chemical Co., 40 F. 2d 1006, 17 C.C.Pa. 1213; "Anacin" and "Alycin", William S. Merrell Co. v. Anacin Co., 109 F.2d 339, 27 C.C.Pa. 847;

"Miracle Whip" and "Salad Whip", Kraft Cheese Co. v. Leston Co., D.C., 43 F.Supp. 782; "Cytamin" and "Dent-A-Min", McKesson & Robbins, Inc. v. American Foundation for Dental Science, 150 F.2d 420, 32 C.C.Pa. 1235. In a case involving Simoniz and Permanize, the court pointed out that the only material difference was in the first syllable of each word, and the court stated: " * * * this court has repeatedly held that the public ought not to be required to dissect and analyze trade-marks in order that confusion and deception might be avoided." Simoniz Co. v. Permanizing Stations of America, Inc., 49 F.2d 846, 847, 18 C.C.Pa. 1374.

In this type of litigation reference to decisions of courts as to other trade-marks is not of great help. Citation of individual cases can only indicate a general pattern. Often the background of the adoption of the mark is of importance on the question of intent. The evidence as to actual confusion or likelihood of confusion differs widely from case to case. However, courts are alert to protect the purchasing public from the conduct of business concerns which do not hesitate to trade upon the good name and the success of a competitor. We think the evidence in this case compels a holding that the trademark "Bonamine" is likely to cause confusion and mistake among purchasers of drugs who seek relief from motion sickness. Defendant adopted the name "Bonamine" apparently with the idea of getting as close to "Dramamine" as was legally possible, but we hold the evidence in this case discloses that defendant got too close.

Defendant claims that plaintiff had knowledge of defendant's announcement of its intention to use the Bonamine trademark in August, 1953, but made no objection until after defendant had spent considerable sums in popularizing its product. In effect, defendant urges laches. The trial court made no finding on this point.

Defendant did announce its intention to use the trademark Bonamine by publication of the fact in what is known as

The Combined Trade-Mark Bureau. A manufacturer may register a trademark with the Bureau which then publishes it in a bulletin circulated to the trade. The Bureau does not approve trademarks.

Although defendant listed Bonamine with the Bureau, it described Bonamine merely as an antihistamine. At that time defendant had determined that the therapeutic use of Bonamine was to be as a motion sickness remedy. In a broad sense, Bonamine was an antihistamine, but defendant has never promoted and never planned to promote Bonamine as a general purpose antihistamine.

■ In November, 1953, plaintiff learned that defendant was using Bonamine as a motion sickness remedy. Plaintiff promptly protested and then started this action on December 16, 1953. Under the circumstances of this case there was no estoppel by laches.

We hold that plaintiff is entitled to an injunction restraining defendant from using Bonamine as a trademark for a motion sickness remedy. However, we do not think that there should be a reference for an accounting or an award of damages.

■ In this case there was proof of but two instances of "palming off", and these were by dealers. It was inherently impossible to prove more than a few instances of actual confusion. A purchaser who has been confused as to a product such as a drug tablet usually makes no complaint that can be traced or, in some instances as shown by the evidence in the instant case, does not learn of the mistake until many months later.

Defendant will suffer a substantial loss by the injunction restraining the use of Bonamine as a trademark. This litigation has now been in the courts over five years. A further controversy on the question of damages may well prolong this litigation for another five years. No one but the lawyers could benefit by such a course. Balancing the equities, we think justice will be served by restraining defendant prospectively from the use of the trademark Bonamine as a motion

sickness remedy. See Q-Tips, Inc. v. Johnson & Johnson, 3 Cir., 206 F.2d 144, 148; Champion Spark Plug Co. v. Sanders, 331 U.S. 125, 131, 67 S.Ct. 1136, 91 L.Ed. 1386.

Judgment reversed with instructions to issue an injunction restraining prospectively the defendant from using the trademark Bonamine to indicate a product useful for or to be used as a motion sickness remedy or preventive.