

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-21-1999

# A&H Sportswear Inc v. Victorias Secret

Precedential or Non-Precedential:

Docket 97-1541

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"A&H Sportswear Inc v. Victorias Secret" (1999). *1999 Decisions.* Paper 17.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/17

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed January 21, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-1541

A&H SPORTSWEAR INC.; MAINSTREAM SWIMSUITS, INC.

v.

VICTORIA'S SECRET STORES, INC.; VICTORIA'S SECRET
CATALOGUE, INC.
        Appellants

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 94-cv-07408 )
(District Judge: Hon. Franklin S. VanAntwerpen)

Argued May 19, 1998

Before: SLOVITER, GREENBERG and GIBSON,*
Circuit Judges

Submitted en banc December 14, 1998

Before: BECKER, Chief Judge, SLOVITER, STAPLETON,
MANSMANN, GREENBERG, SCIRICA, NYGAARD, ALITO,
ROTH, LEWIS, MCKEE, and RENDELL Circuit Judges

(Filed January 21, 1999)

_____

* Hon. John R. Gibson, United States Senior Circuit Judge for the
United States Court of Appeals for the Eighth Circuit, sitting by
designation.

H. Robert Fiebach
Cozen & O'Connor
Philadelphia, PA 19103

Frank J. Colucci (Argued)
Richard P. Jacobson
Colucci & Umans
New York, N.Y. 10022

  Attorneys for Victoria's Secret
  Stores, Inc. and Victoria's Secret
  Catalogue, Inc., Appellants in No.
  97-1541

Michael F. Snyder
Seidel, Gonda, Goldhammer &
Abbott
Philadelphia, PA 19102

Norman Seidel
Laub, Seidel, Cohen & Hof
Easton, PA 18042

Arthur H. Seidel
Stephen J. Meyers (Argued)
Seidel, Gonda, Lavorgna & Monaco
Philadelphia, PA 19102

  Attorneys for A & H Sportswear
  Inc. and Mainstream Swimsuits,
  Inc., Appellees in No. 97-1541

OPINION OF THE COURT

SLOVITER, Circuit Judge.

Presently pending before the en banc court in this trademark infringement action is the appeal (No. 97-1541) of Victoria's Secret Stores, Inc. ("VS Stores") and Victoria's Secret Catalogue, Inc. ("VS Catalogue") (together "VS"), a well-known manufacturer of lingerie and now swimwear, from the order of the District Court that found VS had violated the Lanham Act. This trademark infringement

2

action had been filed by appellee A&H Sportswear ("A&H") and its affiliate, Mainstream Swimsuit, Inc., (together "A&H") challenging VS's use of the trademark THE MIRACLE BRA on lingerie and swimwear. The District Court found that VS did not infringe A&H's trademark by its use of THE MIRACLE BRA on lingerie. However, the District Court did find infringement by VS on the ground that its use of THE MIRACLE BRA on swimwear created a "possibility of confusion" with A&H's MIRACLESUIT swimsuit. It thus ordered VS to publish a disclaimer when marketing THE MIRACLE BRA swimwear and to pay past and future royalty fees to A&H.

VS contends in No. 97–1541 that the District Court's use of a "possibility of confusion" standard rather than the prevalent "likelihood of confusion" standard was error and that the royalty award was an abuse of discretion. For its part, A&H contends that because the District Court found a possibility of confusion between the MIRACLE BRA swimwear and the MIRACLESUIT, it was entitled to an accounting of the profits VS made. A&H filed a cross-appeal (No. 97–1570) in which it contends that the District Court clearly erred in failing to find a likelihood of confusion between THE MIRACLE BRA mark as applied to lingerie and A&H's prior MIRACLESUIT mark.

A panel of this court heard argument on the appeal and cross-appeal on May 19, 1998. Thereafter, the panel recommended a court originated rehearing en banc, see Third Circuit Internal Operating Procedure 9.4, so that the en banc court could decide whether to approve the possibility of confusion standard for trademark infringement applied by the District Court.

After the court solicited the views of counsel for the parties regarding en banc consideration, the court voted to take this case en banc, and the Chief Judge so ordered on August 26, 1998. The parties were given the opportunity to file supplementary briefs. Based on the court's review of the original and supplementary briefs, the court en banc voted to consider VS's appeal (No. 97–1541) on the basis of the briefs submitted by the parties, which forcefully and comprehensively set forth their positions and the relevant law.

The court further determined that the cross-appeal (No. 97-1570) does not present any issue that requires en banc consideration, and resubmitted that appeal to the original panel. We recognize that this treatment will entail some duplication between the panel and en banc opinions.

I.

FACTS AND PROCEDURAL HISTORY

The underlying facts are set forth in the District Court's two lengthy published opinions, A&H Sportswear Co. v. Victoria's Secret Stores, Inc., 926 F. Supp. 1233 (E.D. Pa. 1996) (addressing liability), and A&H Sportswear Co. v. Victoria's Secret Stores, Inc., 967 F. Supp. 1457 (E.D. Pa. 1997) (as amended) (addressing remedies). The District Court's Findings of Fact from the opinion on liability are designated hereafter as FF.

A&H, a closely held Pennsylvania corporation and maker of 10% of the nation's swimsuits, was issued a trademark for its MIRACLESUIT on October 27, 1992; its affiliate, Mainstream Swimsuits, Inc., a Pennsylvania corporation, served as the exclusive distributor of the MIRACLESUIT through its SWIM SHAPER division. Both corporations are controlled by members of the Waldman family. FF 1-2.

The MIRACLESUIT was developed and subsequently marketed as a "control" suit whose patented fabric and design afford the wearer greater "hold-in" control of the hips and waist, making the wearer appear slimmer without the use of girdle-like undergarments. Most MIRACLESUITs contain underwire bras, are of a one-piece design, and retail for $54 to over $100. FF 14. The first interstate use of the mark MIRACLESUIT and the first interstate sale of a MIRACLESUIT occurred in November 1991. FF 21. The name MIRACLESUIT was chosen because it was "unique, dynamic, exciting and memorable." FF 22. In 1992, the MIRACLESUIT was widely advertised, shown, and discussed in trade shows, magazines and the electronic media. FF 27. The MIRACLESUIT was also sold for a brief time in the VS catalogue (1,700 suits were purchased by VS in 1992 and 1993), but the arrangement was discontinued

because VS failed to identify the MIRACLESUIT by its trademark in several instances. FF 29, 30.

VS Stores is the nation's top retailer of lingerie. It is a Delaware corporation headquartered in Columbus, Ohio, and operates over 650 stores throughout the country which focus on intimate apparel, with bra sales the leading product. FF 5. VS Catalogue, a Delaware corporation headquartered in New York City, is a mail order business selling a much wider array of merchandise (including swimwear) through over 300 million catalogues it circulates each year. FF 6. VS Stores and VS Catalogue are independent subsidiaries of Intimate Brands, Inc., owned by The Limited, Inc., based primarily in London. FF 7.

In 1992, VS Stores began developing a cleavage-enhancing bra, which was introduced (then unnamed) in each store in August 1993 and first appeared in the VS catalogue in February 1994. FF 12, 17, 19. The bra uses removable pads, lace, straps, and underwire to accentuate the wearer's bust. FF 15. VS Stores sought a name for its new push-up bra that had a "fresh, flirtatious fun attitude" and chose THE MIRACLE BRA name in December 1992, allegedly after a model, who tried the new bra, exclaimed "Wow, this is a miracle!" FF 23.

The name THE MIRACLE BRA was first used in VS stores in November 1993. FF 19. VS Stores was issued a registration for its trademark THE MIRACLE BRA on August 9, 1994. FF 25. Since its first brisk sales, THE MIRACLE BRA, which retails for under $20, has been heavily marketed and has generated over $132 million in sales. FF 69. A&H did not initially object to VS's trademark use of THE MIRACLE BRA on lingerie.

The following year, VS began to extend THE MIRACLE BRA into swimwear with its introduction of THE MIRACLE BRA bikini in the November 1994 VS catalogue and in ten VS stores as a test market. Sales expanded to 160 stores in the Spring of 1995, and, at that time, THE MIRACLE BRA design and trademark was incorporated into a one-piece swimsuit, using the push-up features of THE MIRACLE BRA. VS retailed the swimsuit for approximately $69, about the same price as many MIRACLESUITs. FF 31-34, 15, 8,

44. Previously, VS Stores had offered swimsuits only three or four times over eight years, but VS Catalogue had begun to build its swimsuit business by launching a swimwear specialty catalogue in March 1994, which contained swimsuits of other manufacturers. FF 5, 32.

In August 1994, even before its first sale of THE MIRACLE BRA swimsuit, VS Stores applied for a registration of THE MIRACLE BRA trademark for swimwear. FF 34. Apparently because it had been using THE MIRACLE BRA name in lingerie, neither VS Stores nor VS Catalogue conducted a separate trademark search of THE MIRACLE BRA trademark as it applied to swimwear. FF 35. In February 1995, the Patent and Trademark Office (PTO) refused the registration on the basis of A&H's prior registration of the MIRACLESUIT, although A&H had not interposed an objection to the registration. FF 31, 36.

In December 1994, just a month after the introduction of THE MIRACLE BRA swimwear collection, A&H filed this suit alleging, inter alia, infringement of its trademark MIRACLESUIT, and seeking a preliminary injunction and damages. The District Court consolidated the injunction hearing with a bench trial on the merits. Following a two-week bench trial, the District Court found no likelihood of confusion between THE MIRACLE BRA mark as applied to lingerie and the MIRACLESUIT mark. That judgment is the subject of A&H's cross-appeal, addressed in the opinion of the panel referred to above.

With respect to the marks as applied to swimwear, the District Court's opinion on liability has no explicit finding that there was no likelihood of confusion between THE MIRACLE BRA and the MIRACLESUIT marks. There are statements in the subsequent opinion on damages which could suggest such a finding, but that opinion contains no explicit analysis of the likelihood of confusion between the two trademarks as applied to swimwear.

The District Court did find, in its opinion on liability, that there was a possibility of confusion between the two marks as applied to swimwear. The District Court believed that under the applicable law "where a party moved into the territory of an established concern, the likelihood of

6

confusion standard' should be lowered to a `possibility of confusion.' " 926 F. Supp. at 1265 (citation omitted). Because the court treated VS as a "newcomer" which used a mark similar to that of an "established concern," it concluded that VS's use of the MIRACLE BRA on swimwear had infringed the MIRACLESUIT mark. After the District Court issued its liability ruling, it certified its order under 28 U.S.C. S 1292(b) as raising the issue of the proper legal standard to be applied to trademark infringement, and VS sought permission to appeal to this court. We declined to accept the interlocutory appeal.

The District Court then conducted a two-day trial on damages. Because no court had ever found a party in violation of the lower possibility of confusion standard (a standard unique to this Circuit), the District Court was without any precedent as to a remedy and decided to borrow an equitable remedy from patent law. It awarded A&H royalties on past and future net sales of THE MIRACLE BRA swimwear, quantified past damages ($63,480 against VS Stores and $1,086,640 against VS Catalogue) and ordered VS to continue to use the following disclaimer: "The Miracle Bra(R) swimwear collection is exclusive to Victoria's Secret and not associated with MIRACLESUIT(R) by SWIM SHAPER(R)". This disclaimer continues to appear wherever VS markets its THE MIRACLE BRA swimwear. VS had begun voluntarily using the disclaimer following the liability verdict.

The District Court denied all of A&H's other claims and requested relief, including relief under the theories of reverse confusion and unjust enrichment, and denied A&H's request for an accounting, punitive damages and attorneys' fees. VS moved for an initial en banc review, focusing on the District Court's adoption of the possibility of confusion standard, but the motion was denied and the appeal was originally heard by the panel. The District Court entered an order staying its order of relief pending appeal. As set forth above, VS's appeal (No. 97-1541) is now before this court en banc. We have jurisdiction under 28 U.S.C. S 1291.

7

II.

DISCUSSION

MIRACLESUIT v. THE MIRACLE BRA for Swimwear

In a trademark infringement action, the "likelihood of confusion" between two marks is a factual matter, subject to review for clear error. Versa Prods. Co. v. Bifold Co., 50 F.3d 189, 200 (3d Cir. 1995). However, the legal standard to be applied is a matter of law and, like all conclusions of law, is subject to plenary review. See Duraco Prods., Inc. v. Joy Plastic Enters., Ltd., 40 F.3d 1431, 1438 (3d Cir. 1994).

To succeed in a claim for trademark infringement under section 32 of the Lanham Act, the owner of a valid and legally protectable mark, such as A&H, must show that the defendant has used a confusingly similar mark. Section 32(1) provides in pertinent part:

> Any person who shall, without the consent of the registrant--
>
> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; . . . shall be liable in a civil action by the registrant . . . .

15 U.S.C. S 1114(1) (emphasis added).

The same standard is embodied in section 43(a) of the Lanham Act, which governs unfair competition claims. That section provides, in pertinent part:

> Any person who, on or in connection with any goods or services, . . . uses in commerce any word, term, name, symbol, or device . . . or any false designation of origin . . . which--
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to . . . the origin, sponsorship, or

8

> approval of [his or her] goods, services, or
> commercial activities by another person . . . shall be
> liable in a civil action by any person who believes
> that he or she is or is likely to be damaged by such
> act.

15 U.S.C. S 1125(a)(1) (emphasis added).

More than a century ago, and even before the enactment of the Lanham Act, the Supreme Court emphasized the need to avoid consumer confusion as the central concern motivating trademark law when it stated, "All that courts of justice can do . . . is to say that no trader can adopt a trademark, so resembling that of another trader, as that ordinary purchasers, buying with ordinary caution, are likely to be misled." McLean v. Fleming, 96 U.S. 245, 251 (1878); see also Dranoff-Perlstein Assocs. v. Sklar, 967 F.2d 852, 862-63 (3d Cir. 1992); Ford Motor Co. v. Summit Motor Prods., Inc., 930 F.2d 277, 293 (3d Cir. 1991); 3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition S 23:1, at 23-6 to -8 (4th ed. 1996). The confusion that trademark law seeks to prevent is confusion as to the source of the goods. Scott Paper Co. v. Scott's Liquid Gold, Inc., 589 F.2d 1225, 1229 (3d Cir. 1978); McCarthy, supra S 23:5, at 23-14.

As the law has developed, the standard to be applied when goods that are the subject of a trademark infringement claim are directly competing, as is the situation with THE MIRACLE BRA for swimwear and MIRACLESUIT, a swimwear product, is different than that applied when the goods are not competing. The ten-factor test for likelihood of confusion between marks that are not competing, derived from Scott Paper Co, 589 F.2d at 1229, is not required when the goods directly compete. In fact, we have said that "[w]here the trademark owner and the alleged infringer deal in competing goods or services, the court need rarely look beyond the mark itself." Interpace Corp. v. Lapp, Inc., 721 F.2d 460, 462 (3d Cir. 1983).

In this case, the District Court did not make an explicit finding as to whether there was a likelihood of confusion between THE MIRACLE BRA when applied to swimwear and MIRACLESUIT, a swimwear product.1 Instead, because the

_____

1. In its opinion on damages, the District Court stated that it had concluded in the liability opinion that "Plaintiffs had not met their

9

court concluded that VS was a newcomer to the swimwear industry, it determined that a lower standard governed infringement and, based on its interpretation of our caselaw, it applied only a possibility of confusion rather than a likelihood of confusion test.2 The District Court concluded that there was a possibility of confusion between the two marks and hence found infringement.

Our decision to take this appeal en banc presents us with the opportunity to clarify whether we previously adopted the possibility of confusion test and, if so, whether we should continue to adhere to it. With this in mind, we examine our prior decisions dealing with this issue on which the District Court relied.

In Country Floors, Inc. v. Partnership of Gepner and Ford, 930 F.2d 1056 (3d Cir. 1991), we considered the claim of Country Floors, a manufacturer and seller of upscale ceramic tiles and accessories, that a competitor's use and advertising of "Country Tiles" constituted infringement and unfair competition. The District Court had granted summary judgment in favor of the alleged infringer, but we reversed because the District Court erred in making credibility findings on summary judgment and because "a number of key factual questions remained, not least among them the likelihood of confusion" between the newcomer's "Country Tiles" logo and the "Country Floors" trademark. Id. at 1058, 1064.

In discussing our holding, we adhered to the prevalent "likelihood of confusion" standard. For example, in the

_____

burden of establishing a likelihood of confusion under the applicable legal doctrines summarized in Scott Paper . . . and its progeny." 967 F. Supp. at 1461. The reference in the liability opinion is to a conclusion of law that followed a lengthy and detailed analysis of the facts and law. To the extent that the earlier analysis applied the likelihood of confusion
standard, it did so only in the lingerie vs. swimwear context, not in comparing swimwear to swimwear.

2. The court noted that in a telephone conversation six months after the conclusion of the trial, the parties agreed the court should consider this doctrine, and A&H's complaint was deemed amended to include this as an alternate theory for relief. See 926 F. Supp. at 1266.

context of finding that there was evidence from which a factfinder could find actual confusion, we noted that "[a]lthough only likelihood of confusion, and not actual confusion, is required by the Lanham Act, actual confusion usually implies a likelihood of confusion." Id. at 1064. We then stated that because the case contained other issues involving "law peculiar to trademark, tradename and unfair competition cases," we would "comment on them for the guidance of the District Court." Id. at 1065. It was in this latter context that the discussion of the possibility of confusion standard arose. We stated:

> [Plaintiff Country Floors] says the Partnership moved into the territory of an established concern and that the "likelihood of confusion standard" should be lowered to a "possibility of confusion," the standard applied when a newcomer enters an area already occupied by an established business. See Telechron, Inc. v. Telicon Corp., 198 F.2d 903, 908-09 (3d Cir. 1952). We agree. This legal conclusion requires the district court to determine what market is relevant to the Corporation's claim that use of the name "Country Tiles" violates S 43(a) of the [Lanham] Act. Thus, if the possibility exists that the names "Country Floors" and "Country Tiles" will be confused, determination of the relevant market becomes especially important on the Corporation's claim that the Partnership has appropriated the Corporation's tradename in violation of S 43(a) of the Lanham Act by adopting a confusingly similar tradename.

Id. at 1065 (citations and footnote omitted).

The 1952 Telechron decision, cited in the above passage, appears to have been the genesis of the "possibility of confusion" test in this circuit. In that case, we, upheld an injunction that was granted to the holder of the Telechron mark, used for clocks and small radio sets, against use of "Telicon" in the television and large radiofield. Telechron, Inc., 198 F.2d at 908. We first noted and emphasized the similarity of the coined words. We also approved the approach of Judge Learned Hand that "as between two arbitrary trade names `any possible doubt of the likelihood of damage should be resolved in favor of the (first user).' "

11

Id. at 909 (quoting Lambert Pharmacal Co. v. Bolton Chem. Corp., 219 F. 325, 326 (S.D.N.Y. 1915)). The Telechron case did not, however, deviate from the statutory likelihood of confusion standard, and thus is questionable precedent for the reference to a new possibility of confusion standard in Country Floors.

Country Floors was cited the following year in Merchant & Evans, Inc. v. Roosevelt Building Products Co., 963 F.2d 628 (3d Cir. 1992), overruled on other grounds by Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763 (1992), a case in which the District Court had granted a preliminary injunction providing relief for infringement of the trade dress of Zip-Rib, a concealed fastener metal roofing system, by a copied product. We held the trade dress feature functional, but discussed the test for confusion in the context of the claim of infringement of the logo. We remanded so that the district court could apply the appropriate factors in determining whether there was a likelihood of confusion. We then stated, in reference to Country Floors,

> we do not preclude the district court from finding on remand that Merchant has satisfied its burden of showing that it is entitled to a preliminary injunction on its trademark infringement claim. As this court held in Country Floors, when a newcomer moves into a territory of an established concern and uses a name or mark similar in some respect to that used by the established concern, "the `likelihood of confusion standard' should be lowered to a `possibility of confusion' " standard. We believe the appropriate course in light of the district court's failure to give sufficient consideration to a number of relevant factors in its analysis is to remand so that the court can consider those factors in its determination of whether Merchant has shown a possibility of confusion between the marks.

Id. at 637-38 (citation omitted).

One respected commentator has characterized our discussion of possibility of confusion in Country Floors as dictum. See McCarthy, supra S 23:3, at 23-12. Indeed, that

12

discussion was neither used in nor essential to the holding. It is more difficult to characterize as dictum the language from Merchant & Evans quoted above, as that was part of the direction to be followed by the District Court on remand. Moreover, we did not treat the references to possibility of confusion as dictum in our subsequent decision in Versa Prods. Co., 50 F.3d at 200.

The issue in Versa was alleged infringement of a trade dress used in control panels of offshore oil-drilling rigs. Both trade dress and trademark infringement are governed by the same statutory provision, section 43(a) of the Lanham Act, which requires a plaintiff to prove there was a likelihood of confusion. See Two Pesos, Inc., 505 U.S. at 769-70. In his opinion, Judge, now Chief Judge, Becker recognized that the usual formulation requires a showing of a likelihood or probability of confusion but stated that, "[w]here an alleged infringer was new to an area and the plaintiff was well-established, this court has at times replaced the `likelihood of confusion' requirement with a lower `possibility of confusion' standard." Versa Prods. Co., 50 F.3d at 200 (citing Telechron, Inc., 198 F.2d at 908-09; Country Floors, Inc., 930 F.2d at 1065; and Merchant & Evans, Inc., 963 F.2d at 637-38). In Versa, we commented that "a Johnny-come-lately copier arguably creates a greater risk" that consumers will be misled as to source, but we nonetheless rejected the "possibility of confusion" standard in trade dress cases, except, at most, as "a factor properly taken into account in assessing the likelihood of confusion." Versa, 50 F.3d at 201.

After distinguishing trade dress from trademark we said, as to the latter:

> The trademark "possibility of confusion" standard must therefore be supported by other considerations. We believe that the primary reasons for lowering the measure of confusion when a newcomer copies an established trademark are the general lack of legitimate reasons for copying a competitor's mark, and the high degree of reliance by consumers on trademarks as indicators of the source of products. Whether or not these considerations translate to the realm of product packaging, we think that with respect to product

13

> configurations the significance of each of the factors is greatly diminished. . . . Indeed, if any modification of the likelihood of confusion standard is justified in the product configuration context, the standard might well be heightened, perhaps to a "high probability of confusion." Nevertheless, we see no need to adopt such a standard today, preferring for now merely to reject the "possibility of confusion" standard for product configuration infringement cases, and adhering to the conventional "likelihood of confusion" standard.

Id. But see Two Pesos, Inc., 505 U.S. at 773 ("There is no persuasive reason to apply different analysis as to [trademarks and trade dress]").

In light of the language in our opinions, the District Court was not unreasonable to interpret our line of cases as establishing that the lower possibility of confusion standard is to be applied when a newcomer enters the swimwear business. Although the District Court expressly rejected characterizing its theory as a "newcomer" doctrine, at least as that theory was applied by the Second Circuit in Thompson Med. Co. v. Pfizer, Inc., 753 F.2d 208, 214 (2d Cir. 1985),3 it is apparent that the court's analysis in fact is premised upon a "newcomer" theory. Because the court characterized VS as a "newcomer" to the swimwear business, it held that VS infringed A&H's MIRACLESUIT based on the possibility of confusion standard.4

VS contends that there is no possibility of confusion standard under the Lanham Act, and that if this court in fact has created such a lower standard, we should reverse course. A&H has consistently argued that the District Court should have begun its analysis with (and found) a likelihood of confusion between THE MIRACLE BRA

_____

3. The District Court noted that the Second Circuit doctrine requires that a senior user's mark be highly distinctive and that the junior user be guilty of bad faith, elements that the Third Circuit has not adopted. 926 F. Supp. at 1265 n.11.

4. VS argues it was erroneously characterized as a newcomer, and that its entry into the swimwear market preceded its use of THE MIRACLE BRA in swimsuits. As we will remand, we will not preclude the District Court from considering that argument.

14

swimwear and the MIRACLESUIT, which would have made resort to the possibility of confusion standard unnecessary. In its reply brief, A&H nevertheless took the position that the possibility of confusion standard also is a proper basis for a finding of liability and for granting the relief it seeks. In its supplemental brief to the en banc court, however, A&H recognizes that such a test would "requir[e] nothing more than airy speculation." A&H Suppl. Br. at 1.

We are concerned that our inexactitude of language may have engendered confusion as to the appropriate standard. For example, this court used the likelihood of confusion standard in Fisons Horticulture, Inc. v. Vigoro Indus., 30 F.3d 466, 472 (3d Cir. 1994), an opinion decided after Country Floors and Merchant & Evans and authored by the same judge who authored Merchant & Evans. Moreover, the district courts in this circuit have not been uniform in their application of our precedent. See, e.g., Guardian Life Ins. Co. of Am. v. American Guardian Life Assurance Co., 943 F. Supp. 509, 521 n.8 (E.D. Pa. 1996) (acknowledging but not applying possibility of confusion standard); Genovese Drug Stores, Inc. v. TGC Stores, Inc., 939 F. Supp. 340, 344–45 (D.N.J. 1996) (same); Barre–Nat'l, Inc. v. Barr Labs., Inc., 773 F. Supp. 735, 740–41 (D.N.J. 1991) (same); Blumenfeld Dev. Corp. v. Carnival Cruise Lines Inc., 669 F. Supp. 1297, 1319–20 (E.D. Pa. 1987) (noting possibility of confusion standard but finding likelihood of confusion).

We take this opportunity to hold that the appropriate standard for determining trademark infringement under the Lanham Act is the likelihood of confusion.

In the first place, "likelihood of confusion" is the language used in the Lanham Act. In the second place, the impressive survey set forth in VS's original brief, and supplemented in its supplemental brief, demonstrates that the other circuits are unanimous in requiring the use of the likelihood of confusion standard in Lanham Act infringement cases. See, e.g., Elvis Presley Enters. v. Capece, 141 F.3d 188, 193 (5th Cir. 1998) ("Likelihood of confusion . . . is more than a mere possibility of confusion."); International Ass'n of Machinists and Aerospace Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 200 (1st Cir. 1996) (markholder "must show more

15

than the theoretical possibility of confusion"); August Storck K.G. v. Nabisco, Inc., 59 F.3d 616, 618 (7th Cir. 1995) (possibility of confusion not sufficient; if it were, "all comparative references would be forbidden, and consumers as a whole would be worse off"); Vitek Sys., Inc. v. Abbott Labs., 675 F.2d 190, 192 (8th Cir. 1982) ("[A] mere possibility is not enough; there must be a substantial likelihood that the public will be confused.' "); see also cases collected in the Appendix.

The cases originally cited by A&H as reflecting acceptance by some courts of the possibility of confusion standard merely use the word "possible" or "possibility" in discussion but do not establish a lower standard for finding liability in trademark infringement. For example, in G.D. Searle & Co. v. Chas. Pfizer & Co., 265 F.2d 385 (7th Cir. 1959), the court, after quoting its earlier statement that "[o]ne entering a field of endeavor already occupied by another should, in the selection of a trade-name or trade-mark, keep far enough away to avoid all possible confusion," id. at 387 (citation omitted) nevertheless plainly stated that "the test under the statute . . . is likelihood of confusion" and applied that test in reversing the District Court's finding for the defendant, id.

Similarly, in Harold F. Ritchie, Inc. v. Chesebrough-Pond's, Inc., 281 F.2d 755 (2d Cir. 1960), although the court stated, "Important in determining whether the second comer's entrance into the market creates possible confusion, is any evidence of conscious imitation of the first comer's product," id. at 758, both the trial court and the Court of Appeals applied the likelihood of confusion standard, see id. at 757-58.

Nor does this court's recent decision in Pappan Enters., Inc. v. Hardee's Food Sys., 143 F.3d 800 (3d Cir. 1998), also cited by A&H, employ a possibility of confusion standard. That was an appeal from the denial of a preliminary injunction. It is true that in the discussion of the irreparable injury factor, a requisite for a preliminary injunction, we stated that irreparable injury could be based on a possibility of confusion, id. at 805, but there we were not addressing the standard for trademark infringement. Pappan neither applied nor endorsed a possibility of

16

confusion standard, as is clear in the next sentence in the opinion which states, in discussing injunctive relief, "This court has held that once the likelihood of confusion caused by trademark infringement has been established, the inescapable conclusion is that there was also irreparable injury." Id.

A leading treatise on trademark law is instructive:

> Likelihood of confusion has been said to be synonymous with "probable" confusion – it is not sufficient if confusion is merely possible. . . . Dicta in a few cases hint at a "possibility of confusion" test. . . . The Third Circuit . . . would apply the theory[of a possibility of confusion standard] to a newcomer entering a territory already occupied by an established business. The Third Circuit has said that the primary reasons for its lower measure of confusion are "the general lack of legitimate reasons for copying a competitor's mark . . . and the high degree of reliance by consumers on trademarks as indicators of the source of their products." [Versa Prods. Co., 50 F.3d at 201.] Author's Comment: The Third Circuit's explanation for its possibility theory does not satisfactorily explain the need for a different standard. Such a rule tilts the competitive playing field in favor of the established company and against the competitive newcomer.

McCarthy, supra S 23:3, at 23–11 to –12 (emphasis in original) (footnotes omitted); see also David Perry, "Possibility of Confusion" in Third Circuit Trademark Infringement: A Standard Without a Test, 71 Temple L. Rev. 101 (1998).

We hold that the District Court erred in holding VS liable under a possibility of confusion standard. Therefore, we will remand this case to the District Court so that it can conduct the appropriate analysis of the likelihood of confusion under the standards set by the Lanham Act and in the relevant precedent. As one commentator explains: "Whether confusion is likely is proved by inference drawn from the totality of relevant facts identified and analyzed by established rules . . . . `There are no hard and fast rules as

17

to how much evidence of confusion is enough. Rather, when looking at the evidence the reviewing court must take into consideration the circumstances surrounding each particular case.' " Richard L. Kirkpatrick, Likelihood of Confusion in Trademark Law, S 1.8 (PLI, 1997) (quoting Dieter v. B&H Indus., Inc., 880 F.2d 322, 326 (11th Cir. 1989)).

Because the District Court did not proceed to that step in its analysis, it did not address whether the interaction between THE MIRACLE BRA and the MIRACLESUIT implicates the doctrine of reverse confusion, expressly adopted by this court in Fisons, 30 F.3d at 474. There we explained, "Reverse confusion occurs when a larger more powerful company uses the trademark of a smaller, less powerful senior owner and thereby causes likely confusion as to the source of the senior user's goods or services." Id. The result of reverse confusion, which is similar to dilution, "is that the senior user loses the value of the trademark – its product identity, corporate identity, control over its goodwill and reputation, and ability to move into new markets." Id. at 474–75 (quoting Ameritech, Inc. v. American Information Technologies Corp., 811 F.2d 960, 964 (6th Cir. 1987)).

In support of its claim of reverse confusion, A&H produced evidence that VS's expenditures for advertising and promotion far surpassed its own, although the parties joust over the actual figures. VS argues that the reverse confusion doctrine is inapplicable because A&H also conducted significant advertising. It points to the $1.2 million A&H spent on direct advertising of MIRACLESUIT and to the extensive free publicity the MIRACLESUIT received. VS concedes that it spent more money on advertising, but insists that A&H was not overwhelmed.

The District Court discussed the advertising campaigns, see 926 F. Supp. at 1250, but did not make an explicit finding regarding reverse confusion. The only purpose of the reverse confusion analysis is to ascertain if consumers are confused as to the source because of the massive influx of advertising and promotional material. Although the District Court's finding that there was no likelihood of confusion as between MIRACLESUIT and THE MIRACLE

18

BRA lingerie necessarily means that it found no reverse confusion in that market, we can draw no conclusion as to what the court found as to reverse confusion in the swimwear to swimwear market. On remand, that will be among the issues to be considered by the court in determining whether A&H has shown a likelihood of confusion.

III.

REMEDY

Inasmuch as we will vacate the judgment for A&H because it was based on the finding of possibility of confusion, it necessarily follows that the remedy ordered will be vacated as well. We nonetheless offer some guidance on the issue of remedies, should the court find infringement under the likelihood of confusion standard.

The Lanham Act provides for two remedies following a finding of liability for infringement. The most generally applied remedy is injunctive relief pursuant to section 34, which provides that "courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office." 15 U.S.C. S 1116(a).

The other statutory remedy, monetary damages (including costs), is provided by section 35, which states in pertinent part:

> (a) When a violation of any right of the registrant of a mark . . . shall have been established . . . the plaintiff shall be entitled . . . subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant

19

> must prove all elements of cost or deduction claimed.
> In assessing damages the court may enter judgment,
> according to the circumstances of the case, for any
> sum above the amount found as actual damages, not
> exceeding three times such amount. If the court shall
> find that the amount of the recovery based on profits is
> either inadequate or excessive the court may in its
> discretion enter judgment for such sum as the court
> shall find to be just . . . . Such sum in either of the
> above circumstances shall constitute compensation
> and not a penalty. The court in exceptional cases may
> award reasonable attorney fees to the prevailing party.

15 U.S.C. S 1117(a).

The District Court declined to enter the broad injunction sought by A&H prohibiting VS from use of THE MIRACLE BRA mark with swimwear. Instead, the court issued an injunction requiring that VS use the disclaimer it was already using ("The Miracle Bra) swimwear collection is exclusive to Victoria's Secret and not associated with MIRACLESUIT(R) by SWIM SHAPER(R) ") when it uses THE MIRACLE BRA trademark with respect to swimwear.

The court explained that A&H had not proven any direct diversion of sales but only a possibility of harm to reputation and goodwill, 967 F. Supp. at 1470, that there was no persuasive evidence that THE MIRACLE BRA bikini is of inferior quality to the MIRACLESUIT, and that an injunction prohibiting VS from using a "miracle" mark for swimwear would "do little to alleviate any existing confusion and resulting damage to reputation and goodwill which may have already occurred. However, relief in the form of a disclaimer is the more likely candidate for correcting any consumer misperceptions as to the source of the parties' products and repairing damage to Plaintiffs' reputation and goodwill." Id. at 1471.

In the present posture of the case, we do not comment on the propriety of injunctive relief, as that will depend on what finding of harm, if any, the District Court makes on remand. We understand VS to have committed itself to continue using the disclaimer, whatever the eventual result in this case. We recognize the difficulty of evaluating the

effectiveness of a disclaimer, but note that this remedy has been applied in other cases, see Springs Mills, Inc. v. Ultracashmere House, Ltd., 724 F.2d 352 (2nd Cir. 1983) (no error in District Court's limited injunction mandating a disclaimer); see also AMF Inc. v. Sleekcraft Boats, 599 F.2d 341 (9th Cir. 1979) (use of contested mark must be accompanied by distinctive house mark or logo), and that the District Court fully articulated why it was an appropriate remedy in this case.

We do comment on the portion of the District Court's order directing VS to pay royalties to A&H. The court directed that VS pay a 4% royalty on all net sales of THE MIRACLE BRA swimwear made prior to the date VS first used the disclaimer, a 2% royalty on sales made after the disclaimer, and a 2% royalty on all net future sales. See 967 F. Supp. at 1482–83. It thus entered judgment against VS Stores in the amount of $63,480 and against VS Catalogue in the amount of $1,086,640.5  VS contends that a royalty award is generally reserved for patent cases, see 35 U.S.C. S 284 (providing royalty in patent law), and that the award here was particularly inappropriate in light of the District Court's finding that VS did not act in bad faith.

The objections to the royalty award are well taken. A royalty is a measure of damages for past infringement, often used in patent cases and in the context of trade secrets, but its use in trademark has been atypical. Neither party has proffered, nor have we found, any case in which a court both ordered a royalty award and continued to permit the infringer to use a disputed trademark, which is the effect of the District Court's order here. The court's award of a royalty for future sales put the court in the position of imposing a license neither party had requested or negotiated.

Even when the courts have awarded a royalty for past trademark infringement, it was most often for continued use of a product beyond authorization, and damages were

_____

5. These figures were based on application of the 4% royalty to the net sales of the MIRACLE BRA swimwear up to the trial on damages. See 967 F. Supp. at 1462, 1477, 1481. Shortly thereafter, VS began to use the disclaimer. Neither party challenges the calculations.)

21

measured by the license the parties had or contemplated. See, e.g., Howard Johnson Co. v. Khimani, 892 F.2d 1512, 1519-20 (11th Cir. 1990); Ramada Inns, Inc. v. Gadsden Motel Co., 804 F.2d 1562, 1563-65 (11th Cir. 1986); Boston Prof'l Hockey Ass'n v. Dallas Cap & Emblem Mfg., Inc., 597 F.2d 71, 75-76 (5th Cir. 1979) (royalty awarded based on license fee that defendant offered to pay but which plaintiff rejected). But see Sands, Taylor & Wood Co. v. Quaker Oats Co. (Sands I), 978 F.2d 947 (7th Cir. 1992); Sands, Taylor & Wood v. Quaker Oats Co. (Sands II), 34 F.3d 1340 (7th Cir. 1994). There is no basis for inferring such an agreement here. Because A&H has suggested no other justification for the royalty on past sales, we need not speculate whether circumstances other than bad faith or a prior licensing agreement would authorize such an award.

We would have similar concern about an award of damages based on any other theory. The cases awarding damages after a finding of likelihood of confusion have measured damages based on proof of lost sales. See, e.g., Brunswick Corp. v. Spinit Reel Co., 832 F.2d 513, 525-26 (10th Cir. 1987); see also Restatement (Third) of Unfair Competition, S 36, cmt. c (absent proof of "actual harm" injunction adequate remedy). In fact, therefore, damages in those cases were measured based on actual confusion even though liability may have been sustained under a lesser burden. In light of the District Court's reiteration in the opinion on damages that "Plaintiffs failed to offer any evidence of lost profits or other pecuniary harm proximately caused by Defendants' use of THE MIRACLE BRA on swimwear," 967 F. Supp. at 1465, and its earlier finding that sales of the MIRACLESUIT have steadily increased since the introduction of the MIRACLE BRA swimwear, id., we see no basis to award damages or impose a royalty on past or future sales.

Should A&H be successful on remand, it will undoubtedly argue that it is entitled to an accounting of profits. As we cannot anticipate what the District Court will find, we note only that "an accounting for profits is a form of equitable relief, and it does not follow as a matter of course upon the mere showing of an infringement. It will be denied where an injunction satisfies the equities of a case,

22

as for example, where there is a clear showing that no profit was made." Williamson-Dickie Mfg. v. Davis Mfg., 251 F.2d 924, 927 (3d Cir. 1958) (footnote omitted).

Finally, we recognize that, depending on its ultimate finding, the District Court may be asked again to order corrective advertising. It previously denied that request in light of its order of a disclaimer, its finding that VS did not act in bad faith,6 and its finding that A&H did not prove any sizeable damage. See 967 F. Supp. at 1478 79; see also Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co., 408 F. Supp. 1219, 1233 (D. Colo. 1976) (awarding corrective advertising where defendant's conduct was "wanton and reckless"), aff'd as modified, 561 F.2d 1365 (10th Cir. 1977). However, we believe that any further comment on remedies, other than our rejection of a royalty under these facts, would be premature.

IV.

CONCLUSION

To summarize, we have held that a plaintiff seeking to show trademark infringement under the Lanham Act must prove that there is a likelihood of confusion between the marks at issue. We have not attempted to define "likelihood of confusion," leaving that to case-by-case development. Because the District Court did not use that standard in holding VS liable for trademark infringement, we must remand. In doing so, we do not require that the court hold a new evidentiary hearing. The court previously held a two-week non-jury trial to determine issues of liability, and a subsequent hearing on damages. We assume that the extensive record, including the transcripts and the exhibits from those trials, is still available to the court and the parties. The court has shown full comprehension of the facts, and it may be that the court can make the relevant findings from the material already available. For example,

_____

6. Based on its finding that VS did not act in bad faith, the District Court rejected A&H's claim under the Pennsylvania Antidilution law, 54 Pa. Cons. Stat. Ann. S 1124. 926 F. Supp. at 1265.

23

we have remanded on the assumption that the court did not make a finding on likelihood of confusion between THE MIRACLE BRA used on swimwear and MIRACLESUIT. If the District Court believes that such a finding can be made based on the record before it, it is free to do so. The District Court is free, however, to supplement the record as it deems appropriate.

For the reasons set forth, we will remand for further proceedings consistent with this opinion. Each party to pay its own costs.

24

APPENDIX

First Circuit:

> IAM v. Winship Green Nursing Ctr., 103 F.3d 196, 200
> (1st Cir. 1996) ("To demonstrate likelihood of confusion
> a markholder . . . must show more than the theoretical
> possibility of confusion.") (citing American Steel
> Foundries v. Robertson, 269 U.S. 372, 382 (1926)); Star
> Fin. Serv., Inc. v. AASTAR Mortgage Corp., 89 F.3d 5,
> 10 (1st Cir. 1996) ("We require evidence of a
> `substantial,' likelihood of confusion –not a mere
> possibility"); Fisher Stoves, Inc. v. All Nighter Stove
> Works, 626 F.2d 193, 194 (1st Cir.1980) ("A mere
> possibility, however, is not enough, there must be a
> substantial likelihood that the public will be confused
> as to the source of the goods.")(citing HMH Publ'g Co.
> v. Brincat, 504 F.2d 713, 717 (9th Cir. 1974)); Valmor
> Prods. Co. v. Standard Prod. Corp., 464 F.2d 200, 202,
> 203 (1st Cir. 1972); T & T Mfg. Co. v. A.T. Cross Co.,
> 449 F. Supp. 813, 819 (D.R.I.), aff'd, 587 F.2d 533 (1st
> Cir. 1978).

Second Circuit:

> Estee Lauder Inc. v. The Gap, Inc., 108 F.3d 1503,
> 1511 (2d Cir. 1997) ("The test, however, is not whether
> confusion is possible; nor is it whether confusion is
> probable among customers who are not knowledgeable.
> Rather, the test . . . is whether confusion is probable
> among numerous customers who are ordinarily
> prudent."); Totalplan Corp. of America v. Colborne, 14
> F.3d 824, 829 (2d Cir. 1994) ("For a finding of
> infringement a probability of confusion, not a mere
> possibility, must be found to exist.") (quoting Gruner +
> Jahr USA Publ'g v. Meredith Corp., 991 F.2d 1072,
> 1077 (2d Cir. 1993)); Reebok Int'l Ltd. v. K–Mart Corp.,
> 849 F. Supp. 252,272 (S.D.N.Y.) ("However, a court can
> only find a Lanham Act violation if there is a likelihood
> of confusion, not merely the possibility of confusion."),
> vacated by consent, 33 U.S.P.Q.2d 1863 (S.D.N.Y.
> 1994).

Fourth Circuit:

25

AMP Inc. v. Foy, 540 F.2d 1181, 1185–86 (4th Cir.1976) ("[T]he test is `likelihood to confuse.' Mere possibility of confusion is not sufficient."); Shakespeare Co. v. Silstar Corp. of America, Inc., 906 F.Supp. 997, 1007 (D.S.C. 1995) ("As the term likelihood of confusion, suggests, while it is not necessary for a trademark owner to prove that the defendant's use of a colorable imitation of its trademark has or will create actual confusion, it is not sufficient for the trademark owner to show a mere `possibility of confusion', or mere resemblance of the marks."), aff'd, 110 F.3d 234 (4th Cir. 1997); Dominion Fed. Sav. and Loan Ass'n v. Ridge Dev. Corp., 231 U.S.P.Q. 976 (E.D. Va.1986); N. Hess & Sons, Inc. v. Hess Apparel, Inc., 216 U.S.P.Q. 721, 734 (D. Md. 1982), aff'd, 738 F.2d 1412 (4th Cir. 1984) ("Although the plaintiff is not required to produce proof of actual confusion, a mere possibility of confusion is not sufficient."); accord Selchow & Righter Co. v. Decilpher, Inc., 598 F. Supp. 1489, 1496– 97 (E.D. Va. 1984); Lacoste Alligator, S.A. v. Bluestein's Men's Wear, 569 F. Supp. 491, 497 (D.S.C. 1983); Pizzeria Uno Corp. v. Temple, 566 F. Supp. 385, 394 (D.S.C. 1983), aff'd, 747 F.2d 1522 (4th Cir. 1984).

Fifth and Eleventh Circuits:

Pebble Beach Co. v. Tour 18 I Ltd., 155 F.3d 526, 543 (5th Cir. 1998) ("The touchstone of infringement is whether the use creates a likelihood of confusion . . . [which] is synonymous with a probability of confusion, which is more than a mere possibility of confusion."); Elvis Presley Enters. v. Capece, 141 F.3d 188, 193 (5th Cir. 1998) ("Liability for trademark infringement hinges upon whether a likelihood of confusion exists between the marks at issue. Likelihood of confusion is synonymous with a probability of confusion, which is more than a mere possibility of confusion.") (citation omitted); Armstrong Cork Co. v. World Carpets, Inc., 597 F.2d 496, 501 n.6 (5th Cir. 1979) ("[Plaintiff] would concede that when the alleged infringer is a newcomer, the test for trademark infringement is not whether there is a likelihood of confusion, but whether there is any possibility of confusion. This Circuit has not

26

adopted that position, and we see no reason to add such a gloss to the language of 15 U.S.C.A. S 1114."); Fram Corp. v. W.E. Boyd, 230 F.2d 931, 934 (5th Cir. 1956) ("[T]he existence of a mere possibility of deception does not in and of itself constitute a basis on which to sustain a charge of unfair competition.").

Seventh Circuit:

August Storck K.G. v. Nabisco, Inc., 59 F.3d 616, 619 (7th Cir. 1995) ("Once again, the district judge apparently believed that a `possibility' of confusion justifies a restriction on competition, which it does not."); S Indus., Inc. v. Stone Age Equip., Inc., 12 F. Supp. 2d 796, 813 (N.D. Ill. 1998) ("[T]he plaintiff must demonstrate a likelihood, not the mere possibility, of confusion."); MJ & Partners Restaurant, L.P. v. Zadikoff, 10 F. Supp. 2d 922, 926-27 (N.D. Ill. 1998) ("[P]laintiff must prove a `likelihood' of confusion, not a mere `possibility' of confusion."); Knaack Mfg. Co. v. Rally Accessories, Inc., 955 F. Supp. 991, 999 (N.D. Ill. 1997) (same); Hooker v. Columbia Pictures Indus., Inc. , 551 F. Supp. 1060, 1064-65 (N.D. Ill.1982) ("There must be a likelihood, and not a mere possibility, of confusion.") (quoting Instrumentalist Co. v. Marine Corps League, 509 F. Supp. 323, 331 (N.D. Ill. 1981)).

Eighth Circuit:

Children's Factory, Inc. v. Benee's Toys, Inc. , 160 F.3d 489, 494 (8th Cir. 1998) ("In order to find a likelihood of confusion, this court has stated that `there must be a substantial likelihood that the public will be confused.' Actual confusion is not essential to afinding of infringement. The mere possibility of confusion, however, is not enough.") (citations omitted); Vitek Sys., Inc. v. Abbott Labs., 675 F.2d 190, 192 (8th Cir. 1982) ("However, a mere possibility is not enough; there must be a substantial likelihood that the public will be confused.") (quoting Fisher Stoves, Inc. v. All Nighter Stove Works, Inc., 626 F.2d 193,194 (lst Cir. 1980)); U.S. Jaycees v. Commodities Magazine, Inc., 661 F. Supp. 1360, 1363 (N.D. Iowa 1987); Omaha Nat'l Bank v. Citibank, N.A., 633 F. Supp. 231, 234 (D. Neb. 1986).

27

Ninth Circuit:

Rodeo Collection, Ltd. v. West Seventh, 812 F.2d 1215,1217 (9th Cir. 1987) ("Likelihood of confusion requires that confusion be probable, not simply a possibility."); First Brands Corp. v. Fred Meyer, Inc., 809 F.2d 1378, 1384 (9th Cir. 1987) ("While the possibility of confusion almost always exists, the test is likelihood of confusion."); HMH Publ'g Co. v. Brincat, 504 F.2d 713, 717 (9th Cir. 1974) ("We commence by emphasizing that the mere possibility that the public will be confused with respect to HMH's sponsorship of appellant's products is not enough. There must exist a likelihood that such confusion will result."); HMH Publ'g Co. v. Lambert, 482 F.2d 595, 598 (9th Cir. 1973) ("The test is not that there might be a`possibility of confusion as to the source of plaintiffs' and defendants' business, but rather whether there is a likelihood of confusion."); Carter-Wallace, Inc. v. Procter & Gamble Co., 434 F.2d 794, 804 (9th Cir. 1970) ("The most this court could say is that there might be a possibility of confusion ... there is certainly no likelihood of such confusion.").

Tenth Circuit:

Buca, Inc. v. Gambucci's, Inc., 18 F. Supp. 2d 1193, 1211 (D. Kan. 1998) ("Establishing `a potential' for confusion is insufficient; plaintiff must demonstrate `a likelihood' of confusion."); United States Surgical Corp. v. Orris, Inc., 5 F. Supp. 2d 1201, 1209 (D. Kan 1998) (plaintiff "must show a probability, not just a possibility, of confusion"). Federal Circuit: Bongrain Int'l (American) Corp. v. Delice de France, Inc., 811 F.2d 1479, 1486 (Fed. Cir. 1987) ("The statute refers to likelihood, not the mere possibility, of confusion.").

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit