**REDKEN LABORATORIES, INC.,**
Appellee,

v.

**CLAIROL, INCORPORATED,** Appellant.

Nos. 72-2491 and 74-1642.

United States Court of Appeals,
Ninth Circuit.

July 26, 1974.

Alfred T. Lee (argued), Weil, Lee & Bergin, New York City, for appellant.

Andrew J. Belansky (argued), Christie, Parker & Hale, Pasadena, Cal., for appellee.

Before CARTER and GOODWIN, Circuit Judges, and EAST,* District Judge.

## OPINION

ALFRED T. GOODWIN, Circuit Judge:

The district court overturned an administrative decision by the Trademark Trial and Appeal Board of the United States Patent Office (hereinafter the Board), and held that Redken's hair-care product sold under the mark "CURL & CONDITION" was not likely to be confused with Clairol's hair-care product sold under the mark "CONDITION", and ruled that Redken's mark was entitled to registration. Clairol appeals.

We agree with the district court that the evidence did not support the Board's finding of a likelihood of confusion as to the origin of the two products in any relevant market, and affirm the denial of injunctive relief to Clairol. However, the district court's ruling that the word "condition" had not acquired a secondary meaning was not necessary to resolve the case, and in light of the possible collateral effects of that holding, we vacate that part of the district court judgment which relates to secondary meaning.

■■ Title 15 U.S.C. § 1071 affords both parties to a completed cancellation proceeding before the Board the option of having all further proceedings conducted as a civil action in the district court.[1] That civil action is intended to be a trial de novo. The decision of the Board, however, must be accepted as controlling on issues of fact "unless the contrary is established · by testimony which in character and amount carries thorough conviction * * *." Morgan v. Daniels, 153 U.S. 120, 125, 14 S.Ct. 772, 773, 38 L.Ed. 657 (1894). The parties may introduce additional evidence relevant to issues raised before the Board. Hoover Co. v. Coe, 325 U.S. 79, 83, 65 S.Ct. 955, 89 L.Ed. 1488 (1945). They did so in this case.

The rule of Morgan v. Daniels has been applied in this circuit to trademark cases involving the likelihood of confusion and secondary meaning. Safeway Stores, Inc. v. Dunnell, 172 F.2d 649 (9th Cir.), cert. denied, 337 U.S. 907, 69 S.Ct. 1049, 93 L.Ed. 1719 (1949).

The record reveals that Clairol's CONDITION and Redken's CURL & CONDITION are both hair-care products sold primarily in the beauty-salon trade. At the relevant times, Clairol's hair conditioner was also sold in retail stores, while Redken's permanent-wave lotion rarely found its way into the retail market, and then only through isolated sales from beauty salons and wholesale supply houses or dealers. However, there is nothing to prevent Redken from marketing CURL & CONDITION in the future through the same retail channels used by Clairol for CONDITION. Redken's trademark registration is not so limited, nor would anything inherent in the product effectively prohibit retail distribution. Therefore, although both the Board and the district court defined the relevant market as the beauty salon trade, we will include a potential retail market in our analysis of the problem of likelihood of confusion.

■ Numerous factors bear upon the likelihood of confusion. These may include: similarity in sound, appearance, and meaning of the marks; the class of

---

* The Honorable William G. East, United States District Judge for the District of Oregon, sitting by designation.

1. Redken initially appealed the decision of the Board to the United States Court of Customs and Patent Appeals. Clairol then elected to have all further proceedings conducted as a civil action in a district court, thus requiring Redken to file its complaint in the court below. See 15 U.S.C. § 1071.

goods; the marketing channels; the intent of the parties; the identity of the purchasers; and the strength or weakness of the mark. *See* Carter-Wallace, Inc. v. Procter & Gamble Co., 434 F.2d 794 (9th Cir., 1970). In the present case there is no evidence that either party was not proceeding in good faith in selecting a weak (descriptive) mark to identify its beauty-salon product.

The Board stated that the products of the parties are similar hair-care supplies which are sold under similar marks and advertised by the same media and sold to beauty salon operators. Without further discussion, the Board concluded that CURL & CONDITION so resembled CONDITION as to be likely to cause confusion as to source.

Our examination of the marks in light of the additional factors set forth above and in light of the considerable evidence presented to the district court relating to these factors leaves us, as the district court's examination left it, with a clear conviction that the Board made a mistake on the issue of confusion. The products are similar only in the sense that both can be applied to hair, as, for example, hair spray and shampoo can both be applied to hair. Here one product, Redken's, is intended for beauty-shop use in making hair curly. The other is intended for shop or home application to hair with split ends, or, in the trade, to "condition" hair. The marks themselves convey the different functions of the two products.

 The record discloses at least five registrations of trademarks for hair "conditioning" products embodying the word "condition," [2] and numerous uses of the word "condition" and its derivatives in the labeling and advertising of such products. The Clairol and Redken products involved in this case are substantially-priced [3] cosmetics, directed toward individual and discriminating taste. Consumers who purchase these products learn of necessity to distinguish between many products designed for application to human hair. Many use the word "condition" somewhere on the label, but few customers are likely to part with their money under a misapprehension caused by the common use of the word "condition." Given the numerous products on the market whose trademarks or labels contain the word "condition," the district judge became convinced that the average, prudent beautician or consumer would not be likely to believe that Redken's CURL & CONDITION came from the same source as Clairol's CONDITION. Having selected a common, useful, and descriptive term as a trademark, Clairol cannot expect for the word "condition" the same broad scope of protection that may be accorded to more distinctive and arbitrary marks. Sure-Fit Products Co. v. Saltzson Drapery Co., 254 F.2d 158, 160, 45 CCPA 856 (1958).

 Accordingly, we agree with the district judge, whose careful analysis of the lengthy record satisfies us that the Board erroneously denied registration to Redken upon a fragile supposition that someone might be confused by the use of the word "condition" in Redken's product name. We affirm the denial of injunctive relief to Clairol, and express no opinion upon the extent to which the word "condition" may have acquired a secondary meaning. To the extent that the district court judgment passed upon the question of secondary meaning, it is vacated.

Affirmed in part; vacated in part.

JAMES M. CARTER, Circuit Judge (concurring and dissenting).

I concur in the opinion vacating the district court judgment relating to the

---

2. In addition to CONDITION by Clairol and CURL & CONDITION by Redken, the *record also disclosed CONDITIONAL by Helene Curtis, Inc., CONDITION/SET by Jheri Redding, Inc., and INSTANT CONDITION AND SET by La Maur, Inc.*

3. The record indicates that prior to and during 1970 the wholesale price to beauty salons was approximately $20 per dozen for Redken's CURL & CONDITION and $23 per dozen for Clairol's CONDITION. Each Redken unit provides one permanent wave; the size of the Clairol units is not clear.

secondary meaning of its mark "CONDITION."

I dissent from that part of the opinion affirming the district court judgment denying injunctive relief to Clairol based on the lack of a likelihood of confusion. The result is to restore Redken's mark "CURL AND CONDITION" to the secondary register.

The Board had accepted Clairol's contentions and ordered cancellation of Redken's mark. The district court overruled the Board on both the "secondary meaning" issue and the "confusion issue." Our decision affirms the district court decision as to the "confusion issue."

I think that the proposed opinion overlooks the district court's failure to abide by the rule of Morgan v. Daniels, 153 U.S. 120, 125, 14 S.Ct. 772, 38 L.Ed. 657 (1894). Furthermore, assuming *arguendo* that the *Morgan* rule was properly applied, I do not see how the district court or this court can justifiably have a clear conviction of the Board's error on the remaining issue of "confusion."

We all agree that under *Morgan* the district court was bound to accept the Board's findings of fact unless, on the basis of the evidence considered by the Board and any new evidence, the court was left with a clear conviction that the Board had erred. Judge Goodwin assumes that the district court followed this rule. (Opinion, p. 1405, lines 15–25). I think the district court did not.

I will admit the district court was apparently aware of the *Morgan* rule, for the case is cited at the outset of the court's opinion below.

Yet awareness of the rule and adherence to it are obviously separate things, as the district court, by misapplying the rule, amply illustrates. Dealing with the factual issue of *confusion,* the court stated that it was *"not convinced that likelihood of confusion exists with respect to plaintiff's [Redken's] mark."* [Emphasis added] [As to "secondary meaning" the district court likewise stated it was "simply not convinced . . . ."]

Thus the district court, whether through misunderstanding of *Morgan* or inadvertence, *based its decision on its lack of conviction that the Board was right, not on a clear conviction that the Board was wrong.* Although not clearly convinced that secondary meaning had been acquired or that likelihood of confusion existed, the district court may still have been without that clear conviction to the contrary which is necessary under *Morgan.* Accordingly, I would reverse the district court's holding as to the lack of a likelihood of "confusion."

Even assuming that the district court was clearly convinced of the Board's error, I believe that such a conviction is unjustifiable and erroneous in light of the evidence in the record favorable to Clairol. I will concede that the evidence leaves some doubt on the factual issues and that the Board may have been wrong, but this very state of doubt makes it impossible justifiably to have a clear conviction.

Without rehashing the evidence here, I think it is fair to say that it is sufficiently two-sided and that the Board's expertise in evaluating such matters should be permitted the benefit of the doubt.

I would reverse the district court's judgment denying injunctive relief to Clairol on the "confusion" issue.