**QWEST COMMUNICATIONS INTERNATIONAL, a Delaware Corporation and Qwest Communications Corporation, a Delaware Corporation, Plaintiffs,**

v.

**CYBER–QUEST, INC., a Pennsylvania Corporation, Marc Hilliker, and Joanne T. Hilliker, Defendants.**

No. 3:CV–00–0876.

United States District Court, M.D. Pennsylvania.

Dec. 6, 2000.

John McN. Cramer, Reed Smith Shaw & McClay, LLP, Harrisburg, PA, F. Douglas Ross, Odin, Feldman & Pittleman, P.C., Fairfax, VA, for plaintiffs.

Kevin F. Guyette, Binghamton, NY, Mark Levy, Binghamton, NY, for defendants.

## MEMORANDUM

CAPUTO, District Judge.

Plaintiffs Qwest Communications Corporation and Qwest Communications International filed this trademark and unfair competition action on May 16, 2000, alleging that Defendants adopted the mark "Cyber–Quest" in violation of federal and state law. (Complaint, Doc.1.) This court has jurisdiction pursuant to 28 U.S.C. §§ 1338(a), 1338(b) and 1367. On June 15, 2000, Defendants filed a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. (Motion to Dismiss, Doc. 3.) Two arguments form the nucleus of Defendants' motion: 1) that the dissimilarity of the marks "Qwest" and "Cyber–Quest" precludes a finding, essential to Plaintiffs' case, that an appreciable number of consumers are likely to be confused as to the source or affiliation of Defendants' products and services; and 2) that Plaintiffs' federal registration of the marks "Qwest" and "Qwest Communications" extends only to the use of the marks in conjunction with the provision of "telecommunications services," and not to their use in providing computer equipment and services. (Memorandum Supporting the Motion to Dismiss, Doc. 3 at 9–12.) As Defendants' have failed to carry their burden under the legal standard applicable to Rule 12(b)(6) motions, the motion to dismiss will be denied.

## BACKGROUND

Plaintiffs are in the business of providing multimedia communications services and products ("telecommunication services") to business and residential consumers, both directly and by means of distributors. (Complaint, Doc. 1 ¶ 9.) Such services include local and long distance telephone services; switched digital services; design of data information networks; internet access services; other internet, intranet and extranet services; network management services; digital fiber network services; broadband multimedia services; and installation and maintenance of electronic data and information networks, framed relays and computer programs. (Id.¶ 11.)

Plaintiffs first used the "Qwest" mark in conjunction with the provision of telecommunications services in 1981, and have used the mark continuously since at least 1985. (Id.¶ 25.) Plaintiffs' marks "Qwest" and "Qwest Communications" have been federally registered since 1996. (Id. ¶¶ 17–24 and Exhibits A–C).

Defendants Marc and Joanne Hilliker are principals in Defendant Cyber–Quest, Inc. (Doc. 1 ¶ 62.) Cyber–Quest is in the business of providing telecommunications services and products as an information service provider, internet application ser-

vice provider, developer of internet application technology, and provider of web hosting, development and design. (Id. ¶ 41.) Plaintiffs allege that such telecommunications products and services, promoted under the "Cyber–Quest" mark, are in direct competition with their "Qwest" products and services. (Id. ¶¶ 47–49.) Accordingly, Plaintiffs' complaint includes federal trademark infringement claims under § 32(1) and § 43(a) of the Lanham Act, as well as state law claims of unfair competition and unjust enrichment. (Id. ¶¶ 64–80, 88–98.)

Plaintiffs further allege that their marks are famous, (Id. ¶ 39), and that Defendants' telecommunications services are perceived to be inferior in quality to their own. (Id. ¶ 50.) This is the predicate for Plaintiffs' trademark dilution claim under § 43(c) of the Lanham Act, which prohibits the commercial use of a mark which tarnishes or diminishes the distinctiveness of another's famous mark. (Id. ¶¶ 81–87.) Defendants have responded to these claims with the present motion to dismiss under Rule 12(b)(6). (Motion to Dismiss, Doc. 3.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. Dismissal should not be granted simply because the plaintiff's allegations do not support the legal theory on which he intends to proceed, *Bowers v. Hardwick*, 478 U.S. 186, 202, 106 S.Ct. 2841, 2849, 92 L.Ed.2d 140 (1986), but only where it appears that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief, *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Accordingly, dismissal is appropriate "only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." *Trump Ho-*

*tels & Casino Resorts, Inc. v. Mirage Resorts, Inc.*, 140 F.3d 478, 483 (3d Cir.1998) (citing *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir.1994). *See also Heffernan v. Hunter*, 189 F.3d 405, 408 (3d Cir.1999).

In deciding a motion to dismiss, a court should generally consider only the allegations contained in the complaint, the exhibits attached to the complaint, matters of public record, and "undisputably authentic" documents which the plaintiff has identified as the basis of his claims and which the defendant has attached as exhibits to his motion to dismiss. *See Pension Benefit Guaranty Corp. v. White Consolidated Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993). However, the court need not assume that the plaintiff can prove facts he has not alleged, *City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 (3d Cir.1998), nor credit the plaintiff's "bald assertions," "unsupported conclusions," "unwarranted inferences," or "legal conclusions masquerading as factual conclusions," *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir.1997).

For a court considering a Rule 12(b)(6) motion, the relevant inquiry is not whether the plaintiff will ultimately prevail on the merits of his claims, but only whether he is entitled to offer evidence in support of them. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Further, while the plaintiff, in order to survive a motion to dismiss, must set forth information from which each element of a claim may reasonably be inferred, *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir.1993), it is the defendant who bears the burden of establishing that the complaint fails to state a claim upon which relief can be granted, *Gould Electronics Inc., v. United States*, 220 F.3d 169, 178 (3d Cir.2000).

## DISCUSSION

### I.

■ "The law of trademark protects trademark owners in the exclusive use of

their marks when use by another would be likely to cause confusion." *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 462 (3d Cir.1983). To establish trademark infringement, the plaintiff must prove 1) the mark is valid and legally protectable; 2) it owns the mark; and 3) the defendant's use of the mark to identify goods and services is likely to create confusion concerning the origin of the goods and services. *Commerce Nat'l Ins. Services, Inc. v. Commerce Ins. Agency, Inc.*, 214 F.3d 432, 437 (3d Cir.2000) (citing *Opticians Ass'n of Am. v. Independent Opticians of Am.*, 920 F.2d 187, 192 (3d Cir.1990)). If the mark has been federally registered and has become "incontestable" under 15 U.S.C. §§ 1058 and 1065, validity, legal protectability and ownership are proved. *Ford Motor Co. v. Summit Motor Products, Inc.*, 930 F.2d 277, 291 (3d Cir.1991). Where a mark has not been federally registered or, if registered, has not become incontestable, the plaintiff may establish validity by showing either that the mark is inherently distinctive, or that it has attained secondary meaning in the mind of the consuming public. *Id.* With respect to ownership of unregistered marks, the first party to begin making continuous commercial use of a mark may assert ownership rights in the mark. *Id.* at 292.

■ It is the third element of an infringement claim, likelihood of consumer confusion, that is the focus of most trademark disputes. A likelihood of confusion exists where "the consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." *Fisons Horticulture, Inc. v. Vigoro Industries, Inc.*, 30 F.3d 466, 472 (3d Cir.1994) (citations and internal quotes omitted). See also 3 McCarthy on Trademarks and Unfair Competition § 23:20.1 (4th ed. 1996) ("The long and the short of the law is that trademark infringement hinges on the likelihood of confusion of an appreciable number of reasonable purchasers").

Neither an exact identity of the marks, nor proof of actual confusion on the part of consumers, is necessary to establish a likelihood of confusion. *Fisons*, 30 F.3d at 477, 472.

■ The legal standard governing the likelihood of confusion determination varies depending on whether or not the goods offered by the parties are in direct competition. *Id.* "Where the trademark owner and the alleged infringer deal in competing goods and services, the court need rarely look beyond the mark itself." *Lapp*, 721 F.2d at 462. *See also Express Services, Inc. v. Careers Express Staffing Services*, 176 F.3d 183, 186 (3d Cir.1999). In such cases, the court examines the marks to determine whether they are "confusingly similar." *Fisons*, 30 F.3d at 473 (citing *Country Floors, Inc. v. Partnership Composed of Gepner and Ford*, 930 F.2d 1056, 1063 (3d Cir.1991)). In so doing, the court may consider the strength which the plaintiff's mark possesses, or lacks, by virtue of being generic, descriptive, suggestive, arbitrary or fanciful. *See, e.g., Express Services*, 176 F.3d at 186 (district court properly focused on the marks themselves where goods were competing, but its clearly erroneous classification of the mark "impacted its determination of the mark's strength"). Generally, if the overall impression created by the marks is essentially the same, it is "very probable" that the marks are confusingly similar. *Opticians Ass'n of Am.*, 920 F.2d at 195 (quoting 2 McCarthy on Trademarks and Unfair Competition § 23:7).

■ "To determine likelihood of confusion where the plaintiff and defendant deal in non-competing goods and services, the court must look beyond the trademark to the nature of the products themselves, and to the context in which they are marketed and sold. The closer the relationship between the products, and the more similar their sales contexts, the greater the likelihood of confusion." *Fisons*, 30 F.3d at 473. In *Scott Paper Co. v. Scott's Liquid Gold, Inc.* 589 F.2d 1225 (3d Cir.1978),

the Third Circuit established a ten-factor test for likelihood of confusion where the goods and services are not in direct competition. *Fisons*, 30 F.3d at 473. *See also A & H Sportswear Inc. v. Victoria's Secret Stores, Inc.,* 166 F.3d 197, 202 (3d Cir. 1999) (en banc). The factors to be considered are as follows: 1) the degree of similarity between the marks; 2) the strength of the owner's mark; 3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; 4) the length of time that the defendant has used the mark without evidence of actual confusion arising; 5) the intent of the defendant in adopting the mark; 6) the evidence of actual confusion; 7) whether the goods, though not competing, are nevertheless marketed through the same channels of trade and advertised through the same media; 8) the extent to which the targets of the parties' sales efforts are the same; 9) the relationship of the goods in the minds of consumers because of the similarity of function; and 10) other facts suggesting the consuming public might expect the trademark owner to expand into the defendant's market.[1] *Fisons,* 30 F.3d at 473 (citing *Scott Paper,* 589 F.2d at 1229).

This last *Scott Paper* factor is of particular importance, since confusion is unlikely unless the ordinary consumer would believe that the two products, though distinct enough not to be in direct competition, are nevertheless sufficiently closely related that one source could have produced both. The Third Circuit has stressed that the "likelihood of expansion factor is pivotal in non-competing cases such as this. One of the chief reasons for granting a trademark owner protection in a market not his own is to protect his right to someday enter that market." *Lapp,* 721 F.2d at 464; *Fisons,* 30 F.3d at 474 (quoting Lapp). The Trademark Trial and Appeal Board has likewise noted the importance of the plaintiff's likelihood of expansion:

> Under the doctrine of natural expansion, the first user of a mark in connection with particular goods or services possesses superior rights in the mark not only as against subsequent users of the same or similar mark for the same or similar goods, but also as against subsequent users of the same or similar mark for any goods or services which purchasers might reasonably expect to emanate from it in the normal expansion of its business under the mark. This is so whether or not the first user of the mark has actually expanded its use of its mark, after the commencement of the subsequent user's use, to goods or services which are the same as or closely related to those of the subsequent user. The application of the doctrine is strictly limited to those cases where the expansion, whether actual or potential, is "natural," that is, where the [two sorts of goods or services] are of such a nature that purchasers would generally expect them to emanate from the same source.

*Mason Engineering and Design Corp. v. Mateson Chemical Corp.,* 225 U.S.P.Q. 956, 962, 1985 WL 72027 (Trademark Tr. &App.Bd.1985) (citations omitted). *Accord Commerce Nat'l Ins. Services v. Commerce Ins. Agency,* 214 F.3d 432, 441 (3d Cir.2000) (plaintiff's rights with respect to the second industry are determined by whether its expansion was "natural," that is, whether reasonable consumers at the time of the defendant's intervening use would have expected plaintiff to expand into the second industry); *Tuxedo Monopoly, Inc. v. General Mills Fun Group, Inc.,* 648 F.2d 1335 (Cust. & Pat.App.1981) (upholding finding that public was likely to believe, upon seeing the defendant's product, that the plaintiff had expanded its use of its mark to a new product); *C–Thru Ruler Co. v. Needleman, d/b/a C–Thru*

---

**1.** It seems clear that the first two *Scott Paper* factors are to be considered even where, because the goods or services are in direct competition, the court focuses on the marks themselves to determine whether they are "confusingly similar." *See Express Services,* 176 F.3d at 186.

*Products,* 190 U.S.P.Q. 93, 1976 WL 21018 (E.D.Pa.1976) ("The expansion doctrine provides that the right to exclusive use of a mark can extend to goods or services closely related to those named in the trademark registration even though another party first used the mark on a particular item"); 4 McCarthy on Trademarks and Unfair Competition § 24:17 (4th ed.1996) ("a trademark owner should be given rights in his trademark, not only for the goods it actually sells, but for all product markets into which it might reasonably be expected to expand in the future").

■ Finally, it should be noted that likelihood of confusion is to be judged from the perspective of an ordinary consumer of the goods or services. *Ford Motor Co.,* 930 F.2d at 293. The degree of care that may be attributed such an ordinary consumer—often referred to as a "reasonably prudent buyer"—will depend on the relevant buying class. *Id.* Even where the class of consumers, taken as a whole, is relatively sophisticated, confusion within a minority of unsophisticated buyers will support a finding of liability. *Id.* "Thus, when a buying class is mixed, the standard of care to be exercised by the reasonably prudent purchaser will be equal to that of the least sophisticated consumer in the class." *Id.*

## II.

■ Defendants in their motion to dismiss contend that there is no likelihood of confusion as to the origin or affiliation of their products and services, and further that these services fall outside the scope of Plaintiffs' federal registrations. (Doc. 3.) In support of their second argument,[2] Defendants claim that their provision of computer equipment and services cannot infringe a trademark whose federal registration lists only telecommunication services. (Id. at 12.) According to Defendants: "Plaintiff cannot rely on its trademark registrations to enter into an unrelated field now occupied by defen-

dants and preempt defendants from continuing the use of CYBER–QUEST." (Id.)

The law, however, is directly to the contrary. "One of the chief reasons for granting a trademark owner protection in a market not his own is to protect his right to someday enter that market." *Interpace Corp. v. Lapp, Inc.,* 721 F.2d 460, 464 (3d Cir.1983); *Fisons,* 30 F.3d at 474 (quoting *Lapp* ). *See also Fleischmann Distilling Corp. v. Maier Brewing Company,* 314 F.2d 149, 151 (9th Cir.1963) ("the Lanham Act of 1946 made plain that infringement might be found and prohibited, though the use of the registered mark was upon goods having different descriptive properties than those set forth in the registration, and though in consequence there was no actual competition between the parties"). In light of the mass of precedent developing the likelihood of confusion standard for non-competing products, discussed in Part I above, Defendants' argument that there can be no infringement where the parties' products differ is simply incorrect. Indeed, the Third Circuit's oft-cited *Scott Paper* test only applies where the products or services are sufficiently different that they are not in direct competition. *A & H Sportswear Inc. v. Victoria's Secret Stores, Inc.,* 166 F.3d 197, 202 (3d Cir.1999) (en banc).

■ Defendants' argument is also inconsistent with the facts of the case, at least the facts as this court must view them for purposes of a motion to dismiss. Though Defendants aver in their brief that they deal in computer equipment and services in addition to telecommunications services, this court may not, in considering a motion to dismiss under Rule 12(b)(6), take cognizance of the factual allegations in the moving party's motion or memorandum of law. *See Pension Benefit Guaranty Corp.,* 998 F.2d at 1196. Rather, after accepting as true the allegations in Plaintiffs' complaint and drawing all reasonable

**2.** Defendants' second argument will be treated first here.

inferences in their favor, this court must conclude that Defendants are direct competitors of Plaintiffs' in the provision of telecommunications products and services. (Complaint, Doc. 1 at ¶ 41.) Consequently, any argument for dismissal founded on the assertion that Defendants do not offer telecommunications services is misplaced.

Even on the assumption that Defendants do deal in computer equipment and services in addition to telecommunications services, it does not follow that Plaintiffs' claims must fail as a matter of law. Defendants could still be found liable for trademark infringement under two distinct theories. First, with regard to the parties' direct competition in the telecommunications services market, Plaintiffs could establish a likelihood of confusion by proving that the marks are "confusingly similar." *See Fisons,* 30 F.3d at 473. Second, with regard to Defendants' provision of computer equipment and services, where the parties would not be in direct competition, Plaintiffs could establish a likelihood of confusion under the ten-factor *Scott Paper* test, especially should they succeed in making a strong showing under the pivotal likelihood of expansion factor. *A & H Sportswear,* 166 F.3d at 202. Thus it is clear that Plaintiffs could fail to establish a likelihood of confusion among purchasers of computer equipment and services, yet succeed in showing a likelihood of confusion among purchasers of telecommunications services. *See, e.g., Plus Products v. Plus Discount Foods,* Inc., 722 F.2d 999 (2nd Cir.1983) (upholding finding of infringement with respect to competing goods, but not with respect to non-competing goods). For all the aforementioned reasons, then, it cannot be said that the scope of Plaintiffs' federal registrations ensures the failure of their infringement claims.[3]

**3.** It should also be emphasized that only one of the five counts in Plaintiffs' complaint, the count alleging trademark infringement under § 32(1) of the Lanham Act, depends for its success on the fact or character of Plaintiffs' federal registrations. Plaintiffs could bring their claims under § 43 of the Lanham Act and under state law even absent federal registration of their marks.

## III.

■ Defendants' first argument in support of their motion to dismiss is the claim that, given the dissimilarity of the marks in question, there is no likelihood of confusion as a matter of law. Likelihood of confusion is a question of fact. *A & H Sportswear,* 166 F.3d at 201–02. As such, a plaintiff opposing a motion to dismiss is entitled to the benefit of all reasonable factual inferences. *Trump Hotels & Casino Resorts,* 140 F.3d at 483. However, if Defendants can establish that an inference of likelihood of confusion would clearly be unreasonable, that is, that no reasonable factfinder could find a likelihood of confusion on any set of facts that Plaintiffs could prove, then Defendants will have shown that confusion is unlikely as a matter of law. *See, e.g., Murray v. Cable Nat'l Broadcasting Co.,* 86 F.3d 858, 860 (9th Cir.1996) ("If the court determines as a matter of law from the pleadings that the goods are unrelated and confusion is unlikely, the complaint should be dismissed").

Defendants' burden of showing that confusion is unlikely as a matter of law is a heavy one. Plaintiffs correctly point out that the *Scott Paper* test involves ten different factors, each of which is fact-dependent. (Plaintiffs' Brief in Opposition to Motion to Dismiss, Doc. 5 at 4–5.) However, since this court must assume that Defendants deal only in telecommunications services, the *Scott Paper* test, which applies only where the goods or services are not in direct competition, is inapplicable here. Yet even the simpler analysis which applies where the goods are competing entails a difficult factual determination of whether the marks are confusingly similar. *Country Floors,* 930 F.2d at 1063.

■ In support of their argument that there is no confusing similarity between

"Qwest" and "Cyber–Quest" as a matter of law, Defendants cite several cases in which the defendant's addition of a word to the plaintiff's mark prevented a finding of confusing similarity. (Doc. 3 at 10.) However, Defendants' precedent is distinguishable from the instant case on the basis of a distinction that was explicitly drawn in each of the five cases cited. In each of these cases, the frequency with which the plaintiff's mark was used in commerce made the mark so weak that appending a single word to it sufficed to create a distinguishable mark. These marks were used with great frequency, and thus were but weak indicators of source, either because they were common laudatory terms used to suggest that the product was desirable, or because they were terms highly suggestive of the things they denominated. The reasoning of the first case cited by Defendants is representative:

> An arbitrary or coined mark is obviously entitled to a wide orbit of protection sufficient to bar the subsequent registration of any mark ... which contains the mark or designation as a recognizable and distinguishing portion thereof. Highly suggestive, laudatory or descriptive designations, however, because of their obvious meaning or suggestion and possible frequent employment in a particular trade as part of trade designations, have been considered to fall within the category of weak "marks".... The theory behind this rests on the obvious character of the term and [the fact] that purchasers have been exposed in a particular trade to such a plethora of trade designations containing this notation that they have been conditioned or accustomed to distinguish between the various marks by other features thereof, notwithstanding how slight they may be.

*Basic Vegetable Products Inc. v. General Foods Corp.*, 165 U.S.P.Q. 781, 784, 1970 WL 9941 (Trademark Tr.&App.Bd.1970). In *Basic Vegetable Products*, the court found that "Magic" was a common laudatory term in the packaged foods industry, and that the frequency of its use in that connection had accustomed consumers to look to other parts of such trademarks to distinguish foodstuffs. *Id.* Accordingly, the mark "Sour Magic" was not confusingly similar to "Magic." *Id.*

Precisely the same reasoning governed the decision in another case cited by Defendants. In *Standard Brands Inc. v. Peters*, 191 U.S.P.Q. 168, 1975 WL 20743 (Trademark Tr.& App.Bd.1976), the court found that "Royal" was a common laudatory term and hence a weak mark, so that the addition of the prefix "Corn" was sufficient to create a distinguishable mark. That court expressly contrasted "arbitrary or unique designations" with marks having an "obvious laudatory or suggestive connotation." *Id.* at 172.

 Further, it directly follows from the statements of a third court cited by Defendants that, except where the plaintiff's mark is weak, adding a word to a strong mark is usually confusing:

> It is true that when a mark of one party completely encompasses another on related products (as in this case) likelihood of confusion will frequently ensue.... However, this is not necessarily the case where descriptive or highly suggestive characteristics of the common portions of the marks or frequent trade use of the common portions are involved.

*Industrial Adhesive Co. v. Borden, Inc.*, 218 U.S.P.Q. 945, 951, 1983 WL 51985 (Trademark Tr.& App.Bd.1983) (citations omitted). The *Borden* court found that the plaintiff's "BOND–PLUS" mark was weak and could be incorporated into the mark "WONDER BOND PLUS" without a likelihood of consumer confusion. "This is primarily because [plaintiff's] "BOND–PLUS" mark is so highly suggestive of adhesive products that it may be regarded as a "weak" mark such that addition of other matter ... would in our judgment be capable of distinguishing "BOND–PLUS" from other adhesive marks in the minds of the consuming public." *Id.*

This distinction between adding material to a strong mark and doing the same to a weak one was drawn by each of the five cases cited by Defendants. *See also Redken Laboratories, Inc. v. Clairol, Inc.,* 501 F.2d 1403, 1405 (9th Cir.1974) (stating, where the plaintiff used "condition" for a hair care product, that "[h]aving selected a common, useful, and descriptive term as a trademark, [plaintiff] cannot expect for the word 'condition' the same broad scope of protection that may be accorded more distinctive marks"); *Plus Products v. Star–Kist Foods, Inc.,* 220 U.S.P.Q. 541 (Trademark Tr.& App.Bd.1983) (the widespread use of the term "plus" meant consumers were unlikely to rely on it in distinguishing products). The Third Circuit has also recognized that a weak mark is unlikely to contribute much to the ability of consumers to distinguish between products and services:

> Of course, the Commerce mark is the same no matter who uses it, but this evidence is not particularly probative of a likelihood of confusion because Commerce is a commonplace mark used by countless businesses in countless contexts. The District Court conceded as much during its analysis of the mark and noted that "given the frequency with which consumers see the mark 'Commerce' . . . they likely have come to recognize that different goods and services identified by the term 'Commerce' may have different origins."

*Commerce Nat'l Ins. Services,* 214 F.3d at 442 (citations omitted).

The present case is not in line with Defendants' precedent. The mark "Qwest" is neither a common laudatory term, nor a term highly suggestive of telecommunications products and services. Rather, when used in the telecommunications context "Qwest" is an "arbitrary or unique designation" not at all suggestive of the products denominated by it. *See A.J.*

*Canfield Co. v. Honickman,* 808 F.2d 291, 296 (3d Cir.1986) (a term is arbitrary, and thus within the class of marks possessing the greatest distinctiveness, if it bears "no logical or suggestive relation to the actual characteristics of the goods"). Consequently, "Qwest" is a strong mark, unlike the marks afforded minimal protection in the cases cited by Defendants. Therefore it follows that, where another mark used for related products or services completely encompasses the "Qwest" mark, there will frequently be a likelihood of confusion. *See Borden,* 218 U.S.P.Q. at 951.

■ In examining trademarks for confusing similarity, it is important to recognize "that if the overall impression created by the marks is essentially the same, it is very probable that the marks are confusingly similar." *Fisons,* 30 F.3d at 477 (citations and internal quotes omitted).[4] Put differently, two marks are confusingly similar if a consumer encountering one while having only a general recollection of the other would likely assume that the two products or services "share a common source, affiliation, connection or sponsorship." *See id.* at 477–78.

The Third Circuit has previously found the trademarks "Lapp" and "Lapp Cable" to be "identical for all practical purposes." *Id.* (citing *Lapp,* 721 F.2d at 463). The present case presents some striking similarities with *Lapp.* In both cases, the defendant's mark is comprised of the plaintiff's strong, arbitrary mark plus a word highly descriptive of the products and services offered by the defendant. Just as a consumer might suppose that Lapp Cable was a new cable and wiring division of Lapp, the well known manufacturer of ceramic insulators for electrical assemblies, so also a consumer might suppose that Cyber–Quest is a new internet services division of Qwest. At the very least, it is quite plausible that a consumer could overlook the slight difference in spelling and

---

**4.** Though *Fisons* was a non-competing goods case analyzed under the *Scott Paper* factors, the court's discussion of the first *Scott Paper* factor, the similarity of the marks, is instructive.

assume that the two sets of products and services "share a common source, affiliation, connection or sponsorship." *See id.* Consequently, it cannot be said that the two marks are not confusingly similar as a matter of law.[5]

As Defendants have not carried their burden of establishing that Plaintiffs have failed to state a claim upon which relief can be granted, Defendants' motion to dismiss under Rule 12(b)(6) will be denied.

---

5. It seems more likely that the two marks *are* confusingly similar as a matter of law, than they *are not* confusingly similar as a matter of law. But this court need not decide that question to dispose of Defendants' motion to dismiss.